**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NEXGEN BRANDS, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>BKBG ENTERPRISES INC. d/b/a )<br>DEVANCO FOODS, )<br><br>Defendant. )<br> ) | Case No. 1:20-cv-5535<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff NEXGEN BRANDS, LLC ("**Nexgen**" or "**Plaintiff**"), by and through its attorneys, complains against Defendant BKBG ENTERPRISES INC., d/b/a DEVANCO FOODS ("**Devanco**" or "**Defendant**") as follows:

**NATURE OF THE ACTION**

1.     This is a civil action for trademark infringement, counterfeiting and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1116(a), 1116(d), 1117(a), 1117(b), 1117(c), and 1125(a).

2.     This is a case about counterfeiting. The Defendant has engaged in a pattern of passing off counterfeit versions of Plaintiff's trademarks for the purpose of selling its meat products. Defendant's conduct both serves to deprive Plaintiff (and its licensees) from sales and also damages Plaintiff's trademark and reputation in the same marketplace. Plaintiff seeks preliminary and permanent injunctive relief and other equitable relief; an order directing Defendant to surrender for destruction all infringing materials; and damages, costs and fees.

## THE PARTIES

3.      Plaintiff is a limited liability company organized and existing under the laws of the State of Iowa with its principal place of business in Cedar Rapids, Linn County, Iowa.

4.      Defendant, BKBG Enterprises Inc. d/b/a Devanco Foods is a corporation duly organized and existing under the laws of the State of Illinois with its principal place of business in Carol Stream, Illinois.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has personal jurisdiction over Defendant, as Devanco is an Illinois corporation and maintains its principal place of business in Illinois.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (2).

## NEXGEN'S TRADEMARK RIGHTS IN THE MIDAMAR MARK

8.      Nexgen is engaged in the business of trademark licensing of food brands and its marks are well known in this industry for being applied to high-quality products.

9.      Nexgen is the owner of the MIDAMAR word mark.

10.     Midamar Corporation ("**MC**"), Nexgen's predecessor-in-interest, began using the MIDAMAR word mark ("**MIDAMAR Mark**") on meat products at least as early as 1981.

11.     MC filed a trademark application at the U.S. Patent and Trademark Office ("**PTO**") for the MIDAMAR Mark (Serial No. 78228141) on March 20, 2003 for use in connection with "Meat; Processed meat, namely, beef, chicken, lamb and turkey; and Entrees consisting primarily of frozen meat" in International Class 29 (date of first use: 12/1981) and

"Export services; On-line retail store services featuring foods" in International Class 35 (date of first use: 10/13/2000).

12.    The PTO issued U.S. Trademark Registration No. 2805076 ("**the '076 Registration**") for the MIDAMAR Mark.

13.    MC filed a Section 8 declaration of use and Section 15 declaration of incontestability for the '076 Registration with the PTO on July 21, 2009, which accepted both on July 30, 2009.

14.    MC filed a Section 8 declaration of use and Section 9 application for renewal for the '076 Registration with the PTO on December 13, 2013, which accepted both on December 26, 2013.

15.    The '076 Registration remains live and in force, and its filing history is public and available to Devanco. (*See* composite **Exhibit A** hereto, comprised of materials related to the '076 Registration).

16.    MC transferred ownership of the MIDAMAR Mark, including the '076 Registration, to Nexgen on January 2, 2015. That same day Nexgen executed a non-exclusive license with MC, including the right to sublicense, to use the MIDAMAR Mark. Per the non-exclusive license, all rights in and to the MIDAMAR Mark and all associated goodwill inure to the benefit of Nexgen.

17.    Nexgen's control of the MIDAMAR Mark allows it to ensure that only authorized licensees sell food products with the MIDAMAR Mark. This is important to prevent confusion in the marketplace and to protect the reputation for quality that purchasers of food products bearing the MIDAMAR Mark have expected for more than nearly forty years.

18.     As Nexgen's licensee, MC sells gyro cones branded with the MIDAMAR Mark. Gyro cones are spiced beef, which is traditionally prepared on a vertical rotisserie. Restaurants and other food service providers purchase gyro cones for use in the preparation of gyro sandwiches and other dishes. MC sells two different gyro cone products: (1) a 40-pound box of gyro cones containing two 20-pound gyro cones ("**the 2/20 Product**") and (2) a 40-pound box of gyro cones containing four 10-pound gyro ones ("**the 4/10 Product**").

### DEFENDANT'S COUNTERFEITING AND ACTS OF INFRINGEMENT

19.     Devanco had actual notice of the '076 Registration through a now expired license with MC.

20.     After January 14, 2020, Devanco had no right or license to use the MIDAMAR Mark.

21.     Since its license expired, Devanco has manufactured and sold at least two different products bearing the MIDAMAR Mark: (1) Devanco's version of the 2/20 Product ("**Knockoff 2/20 Product**") and (2) Devanco's version of the 4/10 Product ("**Knockoff 4/10 Product**").

22.     Photo 1 below shows a counterfeit MIDAMAR Mark on Devanco's Knockoff 2/20 Product.

4

**Photo 1**



23.     Photo 1 shows Devanco's Knockoff 2/20 Product bearing the MIDAMAR Mark, Devanco's USDA establishment stamp, and Devanco's name and address. These items have been circled in red for illustration.

24.     Photo 1 also shows the manufacturing date code which is circled in yellow for illustration. The manufacturing date code indicates that the product was manufactured in the year 2020 (underlined in green) and on the 72nd day of the year (underlined in blue), which was March 12, 2020 – nearly two months after Devanco's license with MC expired.

25.     The MIDAMAR Mark on Devanco's Knockoff 2/20 Product is exactly the same as the MIDAMAR Mark depicted in '076 Registration.

26.     Devanco's use of the MIDAMAR Mark on its Knockoff 2/20 Product without Nexgen's authorization or consent.

27.     The MIDAMAR Mark on Devanco's Knockoff 2/20 Product is a counterfeit mark.

28.     Photos 2 and 3 show a counterfeit MIDAMAR Mark on Devanco's Knockoff 4/10 Product.

**Photo 2**



29.     Photo 2 shows Devanco's Knockoff 4/10 Product bearing the MIDAMAR

Mark and Devanco's USDA establishment stamp. These items have been circled in red for illustration.

30.     Photo 2 also shows the manufacturing date code which is circled in yellow for illustration. The manufacturing date code indicates that the product was manufactured in the year 2020 (underlined in green) and on the 90th day of the year (underlined in blue), which was March 30, 2020 – more than two months after Devanco's license with MC expired.

**Photo 3**



31.     Photo 3 shows another side of the same box of Devanco's Knockoff 4/10 Product bearing the MIDAMAR Mark, Devanco's USDA establishment stamp, and

Devanco's name and address. These items have been circled in red for illustration.

32.    The MIDAMAR Mark on Devanco's Knockoff 4/10 Product is exactly the same as the MIDAMAR Mark depicted in '076 Registration.

33.    Devanco's use of the MIDAMAR Mark on its Knockoff 4/10 Product is without Nexgen's authorization or consent.

34.    The MIDAMAR Mark on Devanco's Knockoff 4/10 Product is a counterfeit mark.

35.    A third party notified Nexgen that Devanco's Knockoff 2/20 Product was available for purchase in Detroit, Michigan in June and July 2020.

36.    A third party notified Nexgen that Devanco's Knockoff 4/10 Product was available for purchase in Northern California in June and July 2020.

37.    Devanco applied a counterfeit MIDAMAR Mark to the packaging of its Knockoff 2/20 Product without Nexgen's authorization or consent.

38.    Devanco applied a counterfeit MIDAMAR Mark to the packaging of its Knockoff 4/10 Product without Nexgen's authorization or consent.

39.    Nexgen sent Devanco a cease-and-desist letter on July 28, 2020, demanding that Devanco cease using the counterfeit MIDAMAR Marks on any Devanco products, including Devanco's Knockoff 2/20 Product and Knockoff 4/10 Product.

40.    Devanco's unauthorized use of the MIDAMAR Mark for the marketing and sale of meat products will irreparably harm Nexgen and the goodwill associated with its federally registered trademark.  Consumers expect that foods bearing the MIDAMAR Mark are high quality, which can only occur when Nexgen has license agreements with its

authorized licensees in order to uphold its high standards and ensure that its customers are getting an authentic MIDAMAR-branded product.

41.     Upon information and belief, Devanco has not stopped selling products bearing counterfeit MIDAMAR Mark, including on its Knockoff 4/10 Product and Knockoff 2/20 Product, in violation of Nexgen's federally protected rights.

## COUNT I
## COUNTERFEITING
### 15 U.S.C. § 1114(a)

42.     Nexgen repeats and alleges each and every allegation contained in paragraphs 1 through 41 of this Complaint and incorporates them herein.

43.     Section 1114(a) of the Lanham Act prohibits the unauthorized use of any reproduction, counterfeit, copy or colorable imitation of a registered trademark in a way that is likely to cause confusion in the marketplace concerning the source of products offered for sale.

44.     Nexgen has a current federal trademark registration covering the MIDAMAR Mark.  The registration is valid and enforceable, and constitutes *prima facie* evidence of Plaintiff's exclusive rights to use the MIDAMAR Mark in commerce in the United States, the State of Illinois, and this Judicial District.

45.     Without the consent of Nexgen, Defendant has offered counterfeit versions of products bearing the MIDAMAR Mark.  Defendant has sold, or caused the sale of, the counterfeit products in interstate commerce.

46.     Defendant has thus engaged in counterfeiting, in violation of Section 32 of the Lanham Act.  Defendant's acts of counterfeiting are knowing and willful.

47. Defendant's acts of counterfeiting have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill that Nexgen enjoys in its registered MIDAMAR Mark, for which Nexgen has no adequate remedy at law.

48. As a direct and proximate result of Defendant's willful violation of the Lanham Act, Nexgen has suffered damages in an amount to be proven at trial.

49. This is an exceptional case and Nexgen is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff NEXGEN BRANDS, LLC, requests that this Court enter judgment in its favor and against Defendant, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT II
## FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(a)

50. Nexgen repeats and alleges each and every allegation contained in paragraphs 1 through 49 of this Complaint and incorporates them herein.

51. By the aforesaid acts, Devanco has infringed upon Nexgen's federal trademark rights protected by its trademark registration, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) and 1114(1)(b), specifically for its unauthorized sales of the Knockoff 2/20 Product bearing the MIDAMAR Mark and for producing packaging for the Knockoff 2/20 Product bearing the MIDAMAR Mark.

52. Nexgen owns valid and enforceable rights in the MIDAMAR mark for use on the goods and services identified in and corresponding to the '076 Registration. Nexgen's

registration in the MIDAMAR Mark is incontestable and constitutes conclusive evidence of Nexgen's exclusive right to license the use of the MIDAMAR Mark for the sale of meat products.

53.     Notwithstanding Nexgen's prior, continuous, and extensive use of the MIDAMAR Marks, Devanco has used, counterfeited, and imitated the MIDAMAR Marks on its own food products – including on its Knockoff 2/20 Product.

54.     Devanco's acts are willful and demonstrate a conscious disregard of Nexgen's trademark rights.

55.     Devanco's use of the MIDAMAR Mark in commerce is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of Devanco's products, all to Nexgen suffering (and will continue to suffer) irreparable injury for which Nexgen and its licensees have no adequate remedy at law.

56.     Nexgen is entitled to a permanent injunction preventing Devanco's further infringement.

57.     Further, Nexgen is entitled to damages and enhanced damages in amounts to be proven at trial as a result of Devanco's unjust enrichment and violations of the Lanham Act.

58.     This is an exceptional case and Nexgen is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff NEXGEN BRANDS, LLC, requests that this Court enter judgment in its favor and against Defendant, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## COUNT III
## FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114(a)

59.     Nexgen repeats and alleges each and every allegation contained in paragraphs 1 through 58 of this Complaint and incorporates them herein.

60.     By the aforesaid acts, Devanco has infringed upon Nexgen's federal trademark rights protected by its trademark registration, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) and 1114(1)(b), specifically for its sales of the Knockoff 4/10 Product bearing counterfeit MIDAMAR Marks and for producing packaging for the Knockoff 4/10 Product bearing counterfeit MIDAMAR Marks.

61.     Nexgen owns valid and enforceable rights in the MIDAMAR mark for use on meat products corresponding to the '076 Registration. Nexgen's registration in the MIDAMAR Mark is incontestable and constitutes conclusive evidence of Nexgen's exclusive right to use the MIDAMAR Mark for the sale of meat products.

62.     Notwithstanding Nexgen's prior, continuous, and extensive use of the MIDAMAR Marks, Devanco has used, counterfeited, and imitated the MIDAMAR Marks on its own food products – including on its Knockoff 4/10 Products.

63.     Devanco's acts are willful and demonstrate a conscious disregard of Nexgen's trademark rights.

64.     Devanco's use of the MIDAMAR Mark in commerce is likely to cause confusion, mistake, or deception as to the source, affiliation, connection, or association of Devanco's products, all to Nexgen suffering (and will continue to suffer) irreparable injury for which Nexgen and its licensees have no adequate remedy at law.

65.     Nexgen is entitled to a permanent injunction preventing Devanco's further infringement.

66.     Further, Nexgen is entitled to damages and enhanced damages in amounts to be proven at trial as a result of Devanco's unjust enrichment and violations of the Lanham Act.

67.     This is an exceptional case and Nexgen is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff NEXGEN BRANDS, LLC, requests that this Court enter judgment in its favor and against Defendant, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

**COUNT IV**
**FEDERAL UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**

68.     Nexgen repeats and alleges each and every allegation contained in paragraphs 1 through 66 of this Complaint and incorporates them herein.

69.     This Count is to remedy acts of false designation of origin and/or false description and representation in commerce under 15 U.S.C. § 1125(a). Defendant's conduct is likely to cause confusion, mistake, or deceit as to the affiliation, connection, or association of Nexgen with Defendants and as to the origin, sponsorship, or approval of Devanco's products by Nexgen.

70.     Devanco's foregoing acts constitute unfair competition, in violation of Section 43(a) of the Lanham Act. Devanco's unlawful acts are knowing and willful.

71.     Devanco's wrongful conduct has deprived, and will continue to deprive, Nexgen of opportunities for controlling and expanding its goodwill.

72.     Devanco's acts of unfair competition have caused, and unless enjoined by this Court will continue to cause, irreparable injury and other damage to the business, reputation and goodwill Nexgen enjoys in its registered mark, for which Nexgen has no adequate remedy at law.

73.     As a direct and proximate result of Devanco's willful violation of the Lanham Act, Nexgen has suffered damages in an amount to be proven at trial.

74.     This is an exceptional case and Nexgen is entitled to recover reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff NEXGEN BRANDS, LLC, requests that this Court enter judgment in its favor and against Defendant, for injunctive relief and damages available under the Lanham Act in an amount to be proven at trial, together with interest and costs, as well as reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Nexgen seeks expedited relief and prays for judgment as follows:

1.     That defendant, Devanco, and its officers, agents, servants, employees, attorneys, and all persons in act of concert or participating with any of them be preliminarily and permanently enjoined and restrained from using, in connection with their business affairs, any of Nexgen's registered trademarks, or any other reproduction, copy or colorable imitation of the MIDAMAR Mark for any purpose;

2.     That Devanco be ordered and directed to file with this Court and serve on Nexgen within thirty (30) days after service of an injunction a written report under oath setting

forth in detail the manner and form in which Devanco has complied with the injunction pursuant to 15 U.S.C. § 1116;

3.      That Nexgen be awarded actual damages, including lost profits in amounts to be proven at trial pursuant to the Lanham Act;

4.      That this case be deemed an exceptional case pursuant to the Lanham Act;

5.      That Nexgen be awarded treble damages for use of a counterfeit mark pursuant to the Lanham Act;

6.      That Nexgen be awarded statutory damages for use of a counterfeit mark pursuant to the Lanham Act;

7.      That Nexgen be awarded enhanced statutory damages for willful use of a counterfeit mark pursuant to the Lanham Act;

8.      That Devanco and all those in privity with it be ordered to surrender for destruction or destroy all materials incorporating or reproducing the MIDAMAR Mark in their possession pursuant to 15 U.S.C. § 1118 and the equitable power of this Court;

9.      That Devanco be ordered to provide an accounting of the gains and profits realized by Defendant from its wrongful acts of counterfeiting, trademark infringement and unfair competition;

10.      That Nexgen be awarded reasonable attorneys' fees pursuant to the Lanham Act;

11.      That Nexgen be awarded costs of this action pursuant to the Lanham Act; and

12.      That Nexgen be awarded such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury on all claims asserted.


DATED:      September 18, 2020.


By:    s/*Jami A. Gekas*
Jami A. Gekas
FOLEY & LARDNER LLP
Bar No.: 6275196
321 North Clark Street Suite 3000
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Fax: (312) 832-4700
jgekas@foley.com

Jacob W. Nelson
SIMMONS PERRINE MOYER
BERGMAN PLC
115 3rd Street SE, Suite 1200
Cedar Rapids, Iowa 52401-1266
Telephone: (319) 896-4032
Fax: (319) 366-1917
jnelson@SPMBLAW.com
*Admission Pending*

ATTORNEYS FOR PLAINTIFF